IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **MARGARET WILSON,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | )     No. 10-2648 Ml/P |
| **SHARP MANUFACTURING COMPANY OF AMERICA,** | ) |
| | ) |
|     **Defendant.** | ) |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference is defendant Sharp Manufacturing Company of America's ("Sharp") Motion for Summary Judgment, filed on August 31, 2011. (ECF No. 14.) Plaintiff Margaret Wilson filed a response in opposition on October 5, 2011. Sharp filed a reply on October 19, 2011.[1] Based on a review of the briefs submitted and the entire record, the court submits the following proposed findings of fact and conclusions of law, and recommends that the Motion for Summary Judgment be granted.

**I. PROPOSED FINDINGS OF FACT**

Margaret Wilson brings this lawsuit against Sharp for alleged

---

[1] On November 21, 2011, the parties filed a Joint Motion to Stay Ruling on Defendant's Motion for Summary Judgment, based on an impending mediation session scheduled for December 19, 2011. On December 29, 2011, the parties filed a Joint Motion to Lift Stay. The court granted that motion and lifted the stay on January 4, 2012.

violations of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"). Specifically, Wilson claims that Sharp fired her on September 1, 2009 for absenteeism, in part due to absences from work that were allegedly protected by the FMLA. Wilson began working for Sharp in 2007 as a temporary or "casual" employee on the assembly line at Sharp's press plant. (Def.'s Statement of Undisputed Material Facts ("SUMF") ¶ 1.)[2] She was later transferred to the solar department, where she worked until she was laid off due to a lack of work on January 23, 2009. (Id. ¶ 2.) Wilson was recalled to work on June 8, 2009, as a casual employee in the solar department. (Id. ¶ 3.) Upon her return to Sharp, she went through a five-hour casual employee orientation, at which time she was given a copy of Sharp's casual employee handbook and informed of Sharp's policies and procedures regarding attendance and absenteeism. (Id. ¶ 5.)

Beginning in July 2009, Wilson worked the 6:00 p.m. to 6:00 a.m. shift. (Id. ¶ 6.) Wilson worked her full shift from 6:00 p.m on Wednesday, August 12, 2009 to 6:00 a.m. on Thursday, August 13, 2009. (Id. ¶ 7.) During the morning of August 13, Wilson began to feel ill. (Id. ¶ 8.) She went to see a nurse practitioner at Christ Community Health Services, where she was diagnosed with a sinus and ear infection, and was given a medical note. (Id. at ¶

---

[2]Unless otherwise noted, the facts discussed herein are not in dispute.

9.) The note was signed by the nurse and stated, "[patient] was seen in the office on 13 Aug 2009," and in the blank space next to the heading "Return to work/school on," the nurse wrote "17 Aug 2009." (Ex. 10, Wilson Dep.) According to Wilson, she was prescribed antibiotics for her infections, which were taken over the course of fourteen days. (Wilson Dep. at 44:5-17.) She did not see any other health care providers for further treatment of her sinus and ear infections. (Id. at 44:18-21.)

Wilson provided her supervisor, Ms. Lennie Branch, with the nurse's note when she arrived for her next shift at 6:00 p.m. on August 13. (Def.'s SUMF ¶ 11.) Wilson told Branch that she had been to the doctor. (Id.) According to Wilson, she told Branch that "I had went to the doctor and I gave her my statement." (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl.'s SUMF") ¶ 11; Wilson Dep. at 39.) Branch took the note and filed it, and then instructed Wilson to leave work and report back on Monday, August 17. (Def.'s SUMF ¶ 13.) According to Wilson, after Branch took the note she went to speak with another Sharp manager and, after about one hour, Branch returned and informed Wilson to leave work. (Pl.'s SUMF ¶ 11.) Wilson did not speak with Branch or any other Sharp employees from the time she left work on the evening of August 13 until she returned to work at 6:00 p.m. on August 17. (Def.'s SUMF ¶ 14.) When Wilson returned on August 17, she was willing and able to work

-3-

the entire shift. (Id. ¶ 15.) However, she was informed by Branch that she needed a clearance from Sharp's nurse in order to return to work. (Id.) Because Sharp's nurse was not in her office at that time, Wilson did not obtain her medical clearance and thus she did not work on August 17. (Id.) Wilson had no other conversations with Branch that day. (Id. ¶ 16.) Wilson saw Sharp's nurse the next day. (Id. ¶ 17.) The nurse cleared Wilson to return to work at that time. (Id. ¶ 18.) Wilson did not speak with Sharp's nurse again during the remainder of her employment with Sharp. (Id. ¶¶ 19-20.)

Approximately one week prior to Wilson's termination, she discussed her August 13-17 absences with Branch, who told Wilson that she needed to "turn in" those absences. (Id. ¶ 21.) Wilson told Branch only that she had been sick during that time and had a doctor's note for the absence. (Id. ¶ 22.) Wilson had no conversations with anyone in Sharp's human resources department prior to her termination. (Id. ¶ 23.)

Wilson was terminated on September 1, 2009, based on unsatisfactory attendance. (Id. ¶ 24.) Among the absences counted against Wilson were her absences on August 13, 14, and 17. (Pl.'s SUMF ¶ 24.) Sharp's casual employee attendance policy provides for termination if an employee has either five unexcused absences during a rolling six-month period or three unexcused absences during a four-week period. (Def.'s SUMF ¶ 25.) Counting her

absences from work on August 13, 14, and 17, Wilson was subject to termination under both of these provisions. (Id. ¶ 26.) Wilson was informed by Daniel Wilburn that she was being fired. (Id. ¶ 27.) When Wilson asked why she was being fired even though she had a doctor's note for her recent absences, Wilburn responded only by stating that her attendance was the reason for her termination. (Id. ¶¶ 28-29.) Wilson did not discuss anything else during this conversation, including the reason for her absences. (Id. ¶¶ 30-31.)

According to Sharp, from August 14, 2008 to August 13, 2009, Wilson worked 1,249 hours and 54 minutes. (Id. ¶ 34; Mullins Summ. J. Aff. ¶ 6.) These calculations are based on a review of Wilson's timecard records conducted by Carolyn Mullins, Sharp's Payroll Manager. (Mullins Summ. J. Aff. ¶ 2.) These hours include 841 hours and 44 minutes for time worked on Regular 1st Shift, 340 hours and 10 minutes for time worked on Regular 3rd Shift, 29 hours and 15 minutes for time worked on 3rd Shift Overtime, and 38 hours and 45 minutes for time worked on 3rd Shift Doubletime. (Def.'s SUMF ¶ 35.) Although Wilson's timecard records attached to Mullins's affidavit show that she worked a total of 1,385 hours and 45 minutes, Sharp contends that those hours include time not worked by Wilson because she was tardy (9 hours and 45 minutes), was off for being sick (8 hours), was off due to a plant shutdown (16 hours), was off for personal reasons (8 hours), when she left work

-5-

early (6 hours and 5 minutes), and was off for unpaid holidays (88 hours). (Mullins Summ. J. Aff. ¶ 6.) Wilson, however, contends that Sharp's calculations are erroneous. Specifically, Wilson claims that Sharp's calculations do not reflect her actual time worked because Sharp only pays its employees based on the employees' shift start and end times. (Pl.'s SUMF ¶ 36; Wilson Summ. J. Aff. ¶ 4-5.) According to Wilson (and as indicated in Mullins's affidavit), when Wilson was late for work, Sharp deducted the missed time from her pay. (Id.) However, Wilson avers that when she clocked in early or worked past her shift, she was not paid for that extra time. (Id.) Based on Wilson's calculations, she worked an additional 1,077 minutes (17.95 hours) without pay. (Id.)

In its Motion for Summary Judgment, Sharp raises three arguments. First, Sharp contends that Wilson is not an "eligible employee" covered by the FMLA because she did not work the requisite 1,250 hours during the twelve-month period prior to the commencement of her August 13, 14, and 17 absences. Second, Sharp argues that Wilson's absences were not due to a "serious medical condition," as required by the FMLA. Finally, Sharp contends that it did not receive sufficient notice from Wilson that she was requesting leave for an FMLA-qualifying condition.

## II. PROPOSED CONCLUSIONS OF LAW

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "The moving party bears the initial burden of production." Palmer v. Cacioppo, 429 F. App'x 491, 495 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001). "The central issue 'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Palmer, 429 F. App'x at 495 (quoting

Anderson, 477 U.S. at 251-52).

**B. Plaintiff'S FMLA Claims**

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)). Section 105 of the FMLA, codified at 29 U.S.C. § 2615, prohibits covered employers from interfering with, restraining, or denying the exercise of their employees' rights under the statute, and also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1), (a)(2), (b). These provisions are enforceable under § 107 of the FMLA, which (1) imposes liability on "[a]ny employer who violates [29 U.S.C.] section 2615," and (2) provides an individual right of action to sue in state or federal court. 29 U.S.C. § 2617(a)(1), (a)(2).

Wilson brings two types of FMLA-based claims against Sharp: an interference claim and a retaliation claim. To prevail on her interference claim (also referred to as an entitlement claim), she must prove that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice

of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006) (citing Walton, 424 F.3d at 485).

As for her retaliation claim (also referred to as a discrimination claim), courts apply the familiar burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Edgar, 443 F.3d at 508. Wilson can make out a *prima facie* case of FMLA retaliation by showing that (1) she availed herself of a protected right under the FMLA by notifying Sharp of her intent to take leave; (2) she suffered an adverse employment action; and (3) there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. Id. (citing Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001)). If the plaintiff satisfies these requirements, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for terminating the employee. Id. As with an interference claim, a plaintiff who brings a retaliation claim must prove that he or she was an "eligible employee" and the defendant was an "employer" as defined under the FMLA. Humenny v. Genex Corp., 390 F.3d 901, 905-06 (6th Cir. 2004) (holding that eligible employee requirement applies to all FMLA claims, including retaliation claims).

1. Eligible Employee

Sharp's first argument in support of its summary judgment motion is that Wilson does not qualify as an "eligible employee" under the FMLA. The FMLA allows an "eligible employee" to take up to twelve weeks of protected, unpaid leave during a twelve-month period if a "serious health condition" renders the employee unable to perform the functions of his or her job. Staunch v. Cont'l Airlines, Inc., 511 F.3d 625, 629 (6th Cir. 2008); 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.303.[3] In order to be eligible for the protections of the FMLA, an employee must have been employed by the employer for at least twelve months, and have been employed "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110. Whether an employee has worked the minimum 1,250 hours of service is determined according to the Fair Labor Standards Act's ("FLSA") principles for determining compensable hours of work:

> The determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA. The determination is not limited by methods of recordkeeping, or by compensation agreements that do not accurately reflect all of the hours an employee has worked for or been in service to the employer. Any accurate accounting of actual hours worked under FLSA's principles may be used.

29 C.F.R. § 825.110(c)(1); see also Staunch, 511 F.3d at 629-30.

---

[3]Pursuant to its statutory authority, the Department of Labor ("DOL") has issued regulations to carry out the FMLA. An update to these regulations went into effect on January 16, 2009. These updated regulations were in effect when the events relevant to this lawsuit occurred.

In the present case, the court finds that there is a genuine dispute of material fact regarding whether Wilson satisfied the 1,250 hour requirement. According to Sharp's calculations conducted by its Payroll Manager, Wilson worked 1,249 hours and 54 minutes – six minutes shy of 1,250 hours. However, Wilson has presented evidence through her own affidavit and Sharp's timecard records that demonstrate she may have worked in excess of 1,250 hours. For example, on July 31, 2009, Wilson was scheduled to work a twelve-hour shift from 6:00 p.m. to 6:00 a.m., with a thirty-minute unpaid lunch break. According to Sharp's timecard records, on that date Wilson scanned in to work at 5:45 p.m., fifteen minutes early. She scanned out of work at 6:01 a.m., one minute after her shift ended. Despite being "on the clock" an extra sixteen minutes, Wilson was only paid for the eleven hours and thirty minutes that she was scheduled to work. Conversely, according to Mullins's affidavit, on occasions when Wilson was late to work, Sharp deducted that time from her pay. Based on Wilson's calculations derived from Sharp's records, she worked an additional 1,077 minutes (17.95 hours) without pay. Although Sharp contends that there is no credible evidence that Wilson actually performed any work during this extra time, viewing the evidence in the light most favorable to Wilson, the court finds that there is a genuine dispute of material fact regarding whether Wilson had been employed for at least 1,250 hours. The court submits that the Motion for

Summary Judgment should be denied as to Sharp's first argument.

   2.   <u>Serious Health Condition</u>

Second, Sharp contends that Wilson did not suffer from a "serious health condition" as defined by the FMLA. The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The DOL regulations implementing the FMLA further provide that a serious health condition involving continuing medical treatment by a medical provider is one that involves:

> A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a)(1),(2).[4]  In addition, a serious health

---

[4]Wilson testified at her deposition that the nurse practitioner prescribed antibiotics to treat her sinus and ear infections, and that she took the antibiotics for fourteen days. (Wilson Dep. 44:5-17.)  According to 29 C.F.R. § 825.113(c), a "regimen of continuing treatment" includes a course of prescription medication, including antibiotics.  Sharp does not argue that Wilson's treatment did not result in a regimen of continuing treatment.

condition involving continuing treatment includes any period of incapacity due to pregnancy or for prenatal care, a chronic serious health condition, a condition which is permanent or long-term, or a condition which requires multiple treatments, such as restorative surgery after an accident or to treat conditions such as cancer, severe arthritis, or kidney disease. 29 C.F.R. § 825.115(b)-(f).

The Sixth Circuit has held that conditions such as sinusitis, bronchitis, and ear infections are "all routine, short-term illnesses not covered by the FMLA." Beaver v. RGIS Inventory Specialists, Inc., 144 F. App'x 452, 456 (6th Cir. 2005) (citing cases); see also Nawrockiv v. United Methodist Ret. Communities, Inc., 174 F. App'x 334, 337 (6th Cir. 2006) (stating that "[g]enerally, an ear infection is not considered to be a serious health condition unless complications develop"); Tafelski v. Novartis Pharm., No. 05-71547, 2007 WL 1017302, at *8 (E.D. Mich. Mar. 28, 2007) (finding that plaintiff's sinusitis and ear infection did not qualify as serious health conditions). In the present case, Wilson's sinus and ear infections did not qualify as serious health conditions covered by the FMLA. She saw a nurse practitioner on one occasion and was prescribed antibiotics. She did not seek any additional treatment from a health care provider for her infections after August 13, and there is no evidence that her condition was a chronic one or that any complications developed from the infections. For these reasons, the court submits that the

Motion for Summary Judgment should be granted on these grounds.[5]

   3. <u>Notice</u>

Third, Sharp asserts that Wilson did not provide sufficient notice as required by the FMLA. The FMLA requires that an employee seeking FMLA-covered leave provide notice to his or her employer. As stated in the regulations:

---

[5]Because the court finds that Wilson's sinus and ear infections did not qualify as serious health conditions, the court does not reach Sharp's argument that Wilson was not incapacitated for more than three consecutive days. Courts have reached different conclusions as to how long an employee must be incapacitated in order to satisfy the FMLA requirements. Some courts have interpreted the FMLA as requiring that an employee be incapacitated for four consecutive days in order to receive protected leave. <u>Murray v. Red Kap Indus., Inc.</u>, 124 F.3d 695, 698 (5th Cir. 1997) ("Thus, under the regulation, where an employee alleges that he has a serious health condition involving continuing treatment by a health care provider, he must first demonstrate a period of incapacity . . . for at least four consecutive days."); <u>Henderson v. Cent. Progressive Bank</u>, No. Civ. A. 01-2963, 2002 WL 31086086, at *3 (E.D. La. 2002) ("the statute requires an absence of at least four consecutive days"); <u>Bond v. Abbott Labs.</u>, 7 F. Supp. 2d 967, 974 (N.D. Ohio 1998) ("Generally then, a health care provider must instruct, recommend, or at least authorize an employee not to work for at least four consecutive days for that employee to be considered incapacitated for the required period of time under the FMLA."). In contrast, in <u>Russel v. North Broward Hosp.</u>, 346 F.3d 1335 (11th Cir. 2003), the Eleventh Circuit held that a fraction of a day more than three was sufficient to trigger the FMLA's protection. <u>Id.</u> at 1344 ("[p]artial calendar days do not qualify, except at the beginning or end of the 'period of incapacity' in order to make up the 'more than' element."). These cases were decided before the updated 2009 FMLA regulations went into effect. In the 2009 regulations, the DOL attempted to eliminate confusion by changing the FMLA's incapacity language from "a period of incapacity of more than three consecutive calendar days" to "a period of incapacity of more than three consecutive, *full* calendar days." However, it is unclear whether the addition of the word "full" applies only to the three-day minimum, or also to any additional days of incapacitation beyond this period.

> [a]n employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave and otherwise satisfy the notice requirements set forth in § 825.302 or § 825.303 depending on whether the need for leave is foreseeable or unforeseeable. An employee giving notice of the need for FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied. In many cases, in explaining the reasons for a request to use leave, especially when the need for the leave was unexpected or unforeseen, an employee will provide sufficient information for the employer to designate the leave as FMLA leave.

29 C.F.R. § 825.301(b). In regard to unforeseeable leave, the regulations further state that "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case" and that:

> [a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job . . . [or] whether the employee or the employee's family member is under the continuing care of a health care provider . . . . When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. . . . Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. The employer will be expected to obtain any additional required information through informal means.

29 C.F.R. § 825.303.

The Sixth Circuit has held that in order to satisfy the notice requirement, "the information that the employee conveyed to the

-15-

employer must have been reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job." Gipson v. Vought Aircraft Indus., Inc., 387 F. App'x 548, 555 (6th Cir. 2010) (quoting Brenneman v. MedCentral Health Sys., 366 F.3d 412, 421 (6th Cir. 2004)). While the employee need not explicitly reference the FMLA when giving notice, he or she must "give the employer enough information for the employer to reasonably conclude" that an FMLA-qualifying event has occurred. Id. (quoting Walton, 424 F.3d at 486.

The court finds that, even if Wilson's condition qualified as a serious medical condition, she did not satisfy her notice obligations under the FMLA. The medical note that Wilson provided to her supervisor on August 13 contained almost no information regarding her upcoming leave. It only stated that Wilson had visited a health clinic and that she could return to work on August 17. The note did not state that Wilson was diagnosed with an illness or that she would require future or continuing treatment. Moreover, it is undisputed that Wilson did not provide any additional information to Sharp other than stating that she had been sick. As stated earlier, "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." While Wilson did slightly more than call in sick, merely telling her employer

that she had been sick and providing a note that only indicated she had been seen at a clinic and could return to work in a few days was insufficient notice under the FMLA. The court finds persuasive the Seventh Circuit's decision in <u>Phillips v. Quebecor World Rai Inc.</u>, 450 F.3d 308 (7th Cir. 2006), which involved a similar factual scenario. In <u>Philips</u>, the plaintiff reported to work, told her supervisor she was "sick," and left early. <u>Id.</u> at 310. Plaintiff submitted a form to her employer indicating that she was seen at a health center that day and should be off work from October 15 until October 19. <u>Id.</u> Plaintiff claimed that her subsequent termination violated the FMLA because the three-day absence beginning October 15 should have been covered as FMLA-qualifying leave. <u>Id.</u> She argued that she provided sufficient information to inform her employer that her absence was FMLA-qualifying, thus triggering the employer's duty to inquire into the nature of the medical reason for the absence. <u>Id.</u> The trial court granted summary judgment for the employer. On appeal, the Seventh Circuit affirmed:

> An employee's reference to being "sick," however, does not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable. Phillips claims that the doctor's note triggered Quebecor's duty of inquiry under <u>Kauffman v. Fed. Express Corp.</u>, 426 F.3d 880, 886-87 (7th Cir. 2005). After an employee requests leave for a serious health condition, the employer may request certification by the employee's health care provider. 29 C.F.R. § 825.305(a). If the certification provided is incomplete, the employer must then afford the employee "a reasonable opportunity to cure" the deficiency. 29 C.F.R. § 825.305(d). These

>regulations, however, address the sufficiency of the doctor's certification rather than the sufficiency of the notice provided by the employee in the first instance.
>
>Requiring employers to determine whether leave is covered by the FMLA every time an employee was absent because of sickness would impose a "substantial and largely wasted investigative burden on employers." Phillips' request for leave coupled with a mention of her sickness did not "place the employer on notice of a probable basis for FMLA leave" because she failed to convey any information regarding the nature of her medical problem. As a matter of law, the information available to Quebecor did not require further inquiry.

Id. at 312 (internal citations omitted); see also Beaver, 144 F. App'x at 456-57 (holding that plaintiff failed to provide sufficient notice where plaintiff used very general terms when describing her health to employer and her note only indicated that she would "need to put off returning home (& to work) for a few days"); Doughtie v. Ashland, Inc., No. 03-2073, 2005 WL 1239286, at *5 (W.D. Tenn. May 24, 2005) (McCalla, J.) (holding that plaintiff failed to provide employer with sufficient notice).

Wilson contends that if Sharp was not satisfied with the adequacy of her notice regarding leave, it was Sharp's obligation to seek further information regarding Wilson's medical condition before terminating her. Wilson cites two Sixth Circuit cases in support of this argument: Verkade v. U.S. Postal Serv., 378 F. App'x 567 (6th Cir. 2010) and Sorrell v. Rinker Materials Corp., 395 F.3d 332 (6th Cir. 2005). Neither of these cases, however, involve the adequacy of the initial notice of potential FMLA applicability provided by an employee. Instead, these cases relate to allegedly

inadequate certifications provided by health care providers. As the court stated in Phillips, "[t]hese regulations [regarding certifications] . . . address the sufficiency of the doctor's certification rather than the sufficiency of the notice provided by the employee in the first instance." Phillips, 450 F.3d at 312. Because Wilson did not provide Sharp with sufficient notice, the court submits that the Motion for Summary Judgment should be granted on these grounds as well.

### III. RECOMMENDATION

For the reasons above, the court recommends that Sharp's Motion for Summary Judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

January 27, 2012
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**